**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY<br>OF MARYLAND and ZURICH AMERICAN<br>INSURANCE COMPANY, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 16-CV-270-GKF-FHM |
| RIESS FAMILY, LLC, ROBERT A.<br>RIESS, SR., and REBECCA RIESS, | )<br>)<br>) | |
| Defendants, | )<br>) | |
| v. | )<br>) | |
| GEORGE THOMPSON, TSOR, L.L.C, and<br>ALLIANT INSURANCE SERVICES, INC., | )<br>)<br>) | |
| Third-Party Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment on the Third-Party Complaint [Doc. #75], filed by third-party defendants George Thompson, TSUR, L.L.C., and Alliant Insurance Services, Inc., and the Motion for Summary Judgment Against Third Party Defendants [Doc. #78], filed by third-party plaintiff Rebecca Riess. For the reasons discussed below, third-party defendants' motion for summary judgment is granted, and third-party plaintiff's motion for summary judgment is denied.

**I.      Background**

This case arises from a dispute concerning a General Indemnity Agreement. The Indemnity Agreement was executed in favor of Fidelity and Deposit Company of Maryland and Zurich American Insurance Company (collectively, "Surety") as consideration for the issuance of

surety bonds naming Sheehan Pipe Line Construction Company as principal on certain construction projects. Unpaid subcontractors and suppliers have made claims on the surety bonds and Surety has incurred, and will incur, substantial losses. Surety alleges it made demand on the defendants to honor their obligations as indemnitors under the Indemnity Agreement, but defendants have failed to pay. *See* [Doc. #2].

The same day Surety initiated this case, defendants filed a Petition for Declaratory Relief and Alternative Relief against Zurich American Insurance Company in state district court. In that Petition, the defendants seek a declaratory judgment that the Indemnity Agreement excludes the personal assets of defendant Rebecca Riess that are not construction assets of Sheehan Pipe Line. In the alternative, the defendants seek a declaratory judgment that the Indemnity Agreement is unenforceable based on fraud in the inducement. *See* [Doc. #2-1 in case no. 16-CV-350-GKF-PJC]. Zurich removed the declaratory judgment action. This court consolidated the action with this case, and converted defendants' requests for declaratory relief to counterclaims. *See* [Doc. #23]. Additionally, defendants filed a Third-Party Complaint against George Thompson, TSUR, L.L.C., and Alliant Insurance Services, Inc.[1] The Third-Party Complaint asserts misrepresentation and negligence claims.[2] *See* [Doc. #38].

Both Rebecca Riess and third-party defendants seek summary judgment on the claims asserted in the Third-Party Complaint.

---

[1] "TSUR, L.L.C" is incorrectly named in the Third-Party Complaint as "TSOR, L.L.C." *See* [Doc. #48].

[2] On January 17, 2018, this court granted Robert Riess and Riess Family L.L.C's Unopposed Motion to Dismiss with Prejudice the claims against third-party defendants. However, the claims asserted by Rebecca Riess against the third-party defendants remain pending. *See* [Doc. #69].

## II.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998).  A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.  Material Facts

The following material facts are uncontested:

In 2015, Robert A. Riess, Sr. served as president and chief executive officer of Sheehan Pipe Line Construction Company.  [Doc. #76, pp. 5-6 ¶ 1; Doc. #96, p. 6 ¶ 1; Doc. #78, p. 3 ¶ 1; Doc. #91, pp. 3-8].  Sheehan Pipe Line wished to bid on a number of potentially lucrative pipeline

construction projects—including contracts with Texas Eastern Transmission, LP; Ohio River Systems, LLC; and Transcontinental Gas Pipe Line Company, LLC—which required it to secure payment and performance bonds.  [Doc. #76, pp. 6-7 ¶ 8; Doc. #96, p. 7; Doc. #78, p. 3 ¶ 2; Doc. #91, pp. 3-8].  To that end, Alliant Insurance Services, Inc. acted as a surety broker.  [Doc. #76, p. 6 ¶ 6; Doc. #96, p. 7].  George Thompson, through his business entity TSUR, L.L.C., acted as a consultant to Alliant in the brokering of bonds to Sheehan Pipe Line.  [Doc. #76, p. 6 ¶¶ 4-5; Doc. #96, p. 7].

Surety agreed to issue certain performance and payment bonds naming Sheehan Pipe Line as principal.  [Doc. #96-15].  However, in 2015, Sheehan Pipe Line experienced financial struggles.  [Doc. #76, pp. 6-7 ¶ 8; Doc. #96, p. 7].  As a result, Surety required that Robert Riess's wife, Rebecca Riess, and their affiliated family entity, Riess Family, LLC, execute a General Indemnity Agreement in favor of Surety to further secure the bonds with their personal assets.[3] [Doc. #76, p. 7 ¶ 9; Doc. #96, p. 7].  In a January 27, 2015 email from Thompson to David Sheehan, Thompson stated as follows:

> The indemnity issue raises an interesting question.  The agreement that Zurich has now has you and Rob signing individually.  Normally the surety would ask for both wives indemnity and frankly Zurich wants it that way.  They would back off on Becky [Rebecca Riess] if you ask but making him refuse could give you leverage down the road as you address his future.  This decision is yours.

[Doc. #78-10].  On January 28, 2015, Surety revised the Indemnity Agreement to include Rebecca Riess as a signatory.  [Doc. #78-2].  The General Indemnity Agreement includes the following provision:

---

[3] Surety also requested that Sheehan Pipe Line's majority owner and other principal, David Sheehan, and his wife execute the General Indemnity Agreement in favor of Surety to secure the bonds with their personal assets.  [Doc. #76, p. 7 ¶ 9; Doc. #96, p. 7].

**28. WAIVER OF EXEMPTIONS**: Indemnitors waive all rights to claim any of their property, including their respective homesteads. as exempt from any levy, execution, sale or other legal process by Surety unless such waiver is prohibited by law.

[Doc. #76-10, p. 6]. The Indemnity Agreement designates Riess Family, LLC, Robert A. Riess, Sr., and Rebecca Riess as "Indemnitors." [*Id.*].

On January 30, 2015, Rebecca Riess and Robert Riess, individually, and Robert Riess on behalf of Riess Family, LLC, signed the Indemnity Agreement in Belleville, Illinois. [Doc. #76, pp. 12-13 ¶ 20; Doc. #96, p. 13; Doc. #78-1, p. 56:6-13]. Belleville, Illinois is in the Central Time Zone. [Doc. #76, pp. 12-13 ¶ 20; Doc. #96, p. 13]. At 12:56 p.m. CST, Robert Riess scanned the executed signature pages at his brother's place of business and emailed them to Leonard Pataki, Sheehan Pipe Line's then-general counsel. [Doc. #76, p. 13 ¶ 21(a); Doc. #96, pp. 13-15, ¶ 13; Doc. #76-8; Doc. #76, pp. 15-21 ¶ 22; Doc. #96, pp. 13-16]. At 1:57 p.m. CST, Pataki assembled the Indemnity Agreement with all signatures and emailed the complete executed Indemnity Agreement to Thompson in an email with the subject matter line "Zurich-Sheehan GIA." [Doc. #76, p. 13 ¶ 21(b); Doc. #96, pp. 13-15 ¶ 13; Doc. #76-9; Doc. #76, pp. 15-21 ¶ 22; Doc. #96, pp. 13-16]. At 2:04 p.m. CST, Thompson forwarded the complete executed Indemnity Agreement to Surety. [Doc. #76, p. 14 ¶ 21(c); Doc. #96, pp. 13-15 ¶ 13; Doc. #76-10; Doc. #76-19, pp. 6-7; Doc. #76-25; Doc. #76-26; Doc. #76, pp. 15-21 ¶ 22; Doc. #96, pp. 13-16]. At 2:15 p.m. CST, Thompson replied to Pataki's earlier email in an email titled, "Re: Zurich-Sheehan GIA." [Doc. #76, pp. 14-15 ¶ 21(d); Doc. #96, pp. 13-15 ¶ 13; Doc. #76-11; Doc. #76-19, pp. 6-7; Doc. #76-27; Doc. #76-28; Doc. #76, pp. 15-21 ¶ 22; Doc. #96, pp. 13-16].[4] The email stated as follows:

---

[4] Riess purports to dispute the timing of the 2:15 p.m. CST email, citing Rebecca Riess's deposition testimony that the Riesses did not arrive in Belleville, Illinois until 2:15 p.m. CST such that she could not have signed the Indemnity Agreement prior to 2:15 p.m. CST. *See* [Doc. #96, p. 14 ¶

Thank you Leonard for all your help.

Please send the original to:
Tom Finn
Zurich Surety
863 Creston Drive
Maitland, Fl.32751

Zurich has agreed to issue a rider to the GIA excluding the personal assets of Tamara and Rebecca that are not construction assets. For example for Tamara it would be the house in Tulsa, the condo in Hawaii but not limited to that. David and Rob are aware of this and what I will need is a list from both for Zurich to review.

I don't know about you but I am planning to have a stiff drink this evening!

[Doc. #76-27; Doc. #96-5]. The email was intended to confirm an earlier telephone conversation between Thompson and Pataki. [Doc. #78-4, p. 78:8-19]. However, due to Thompson's typographical error, Thompson conveyed that Surety had agreed to issue a rider, when he intended to convey that Surety had agreed to *consider* issuing a rider. [Doc. #76, p. 15 ¶ 21(f); Doc. #96, pp. 13-15 ¶ 13; Doc. #76-15, pp. 88:24 to 89:10]. Surety never authorized a rider to the Indemnity Agreement excluding Rebecca Riess's personal assets. [Doc. #78, p. 4 ¶ 10; Doc. #91, pp. 5-8; Doc. #78-4, pp. 56:5 to 57:13 and 77:5 to 78:2].

_____

13 (citing Doc. #96-1, p. 139:16-141:19)]. However, Rebecca Riess went on to testify that she did not recall the specific time that the Riesses arrived in Belleville, and that she just knows that she arrived "sometime that afternoon." *See* [Doc. #96-1, p. 141:9-19]. Further, Rebecca Riess does not dispute third-party defendants' fact no. 22, which provides four independent reasons for the correctness of the email chronology, including expert testimony. *See* [Doc. #76, pp. 15-21 ¶ 22; Doc. #96, pp. 13-16]. Finally, "as with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *Thomson v. Salt Lake Cnty.,* 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)).

Sheehan Pipe Line filed for bankruptcy in 2016 in the United States Bankruptcy Court for the Northern District of Oklahoma (case no. 16-10678-M). As previously stated, Sheehan Pipe Line's creditors have made claims on the surety bonds. [Doc. #76, p. 8 ¶ 15; Doc. #96, pp. 9-10 ¶ 9].

## IV.    Analysis

Both Rebecca Riess and third-party defendants assert entitlement to summary judgment on the claims asserted in the Third-Party Complaint. Third-party defendants argue that Rebecca Riess cannot establish the elements of her claims and, further, Alliant Insurance Services, Inc. separately argues that it cannot be vicariously liable for Thompson's conduct. Rebecca Riess argues that the undisputed evidence establishes liability against third-party defendants for negligent misrepresentation and/or constructive fraud and therefore seeks judgment as a matter of law. The court will first consider Rebecca Riess's direct claims against Thompson.

### A.    *Direct Claims Against Thompson*

As previously stated, the Complaint asserts two causes of action: misrepresentation and negligence. The court will first consider the misrepresentation claim.

#### 1.    Misrepresentation

Third-party defendants argue that Rebecca Riess's misrepresentation claim must be analyzed solely as a claim for actual fraud, not constructive fraud or negligent misrepresentation. The court is not persuaded.

"Oklahoma has not recognized an intentional misrepresentation cause of action separate from an action based on fraud." *Dobbs v. Wyeth Pharms.*, 848 F. Supp. 2d 1335, 1339 (W.D. Okla. 2012) (citing *Nichols v. Pray, Walker, Jackman, Williamson & Marler, P.C.*, 144 P.3d 907, 912 (Okla. Civ. App. 2006)). "Actual fraud is the intentional misrepresentation or concealment of

a material fact which substantially affects another person." *Faulkenberry v. Kan. City S. Ry. Co.*, 602 P.2d 203, 206 (Okla. 1979). Rebecca Riess does not argue that Thompson committed actual fraud, nor does she present any evidence of actual fraud.

However, under Oklahoma law, "fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth." *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045 (Okla. 2013). Oklahoma law recognizes both actual and constructive fraud, with constructive fraud having the "same legal consequence" of actual fraud. *Id.* at 1046. Constructive fraud "may be based on a negligent misrepresentation or an innocent misrepresentation where there is an underlying right to be correctly informed of the facts." *Id.*

Additionally, Oklahoma courts have recognized a cause of action for negligent misrepresentation, and adopted the RESTATEMENT (SECOND) OF TORTS § 552. *See Lopez v. Rollins*, 303 P.3d 911, 916 (Okla. Civ. App. 2013); *6001 May, LLC v. Stamatis Enters., Inc.,* No. CIV-14-482-M, 2015 WL 1843525, at *4-5 (W.D. Okla. Apr. 20, 2015). Pursuant to RESTATEMENT (SECOND) OF TORTS § 552:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Lopez*, 303 P.3d at 916 (quoting RESTATEMENT (SECOND) OF TORTS § 552). Thus, both negligent misrepresentation and constructive fraud "require the existence of a duty, legal or equitable, owed by the defendant to the plaintiff." *Cashcall, Inc. v. Bancfirst*, No. CIV-16-927-W, 2016 WL 9559037, at *5 n.10 (W.D. Okla. Dec. 15, 2016).

As previously stated, third-party defendants object to Rebecca Riess's characterization of her claims as constructive fraud and negligent misrepresentation, arguing that the Third-Party Complaint does not assert either claim and that summary judgment is inappropriate on unpled causes of action. The Tenth Circuit recognizes that "[a]n issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to Federal Rule of Civil Procedure 15." *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011). Pursuant to Rule 15, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Thus, the Tenth Circuit has stated

> [a]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."

*Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 at 194 (1990)). Prejudice most often occurs when the new claim raises significant new factual issues. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006).

Here, Rebecca Riess's motion for summary judgment primarily argues that third-party defendants are liable for negligent misrepresentation and constructive fraud. *See* [Doc. #78]. Third-party defendants have had the opportunity to respond to these allegations. *See* [Doc. #91]. Further, it is clear that the factual basis for the negligent misrepresentation and constructive fraud claims is the same as Rebecca Riess's misrepresentation claim—that Thompson misrepresented Surety's willingness to issue a rider excluding Rebecca Riess's personal assets from the scope of the Indemnity Agreement to Rebecca Riess's detriment. Finally, the third-party defendants do not dispute that Rebecca Riess asserts actual fraud and, under Oklahoma law, constructive fraud bears the same legal consequence as intentional misrepresentation (actual fraud), as "[f]raud [is] a

generic term with multiple meanings, . . . divided into actual and constructive." *Faulkenberry*, 602 P.2d at 206 (internal footnotes omitted).[5]   Thus, the court is persuaded that third-party defendants will suffer no prejudice, and the court will therefore consider Rebecca Riess's constructive fraud and negligent misrepresentation claims.

a.     Constructive fraud

Liability for constructive fraud requires proof of the following:

(1)     That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. *This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;*

(2)     That the defendant misstated a fact or failed to disclose a fact to plaintiff;

(3)     That the defendant's misstatement or omission was material;

(4)     That plaintiff relied on defendant's material misstatement or omission; and

(5)     That plaintiff suffered damages as a result of defendant's material misstatement or omission.

*Specialty Beverages, L.L.C. v. Pabst Brewing Co.,* 537 F.3d 1165, 1180-81 (10th Cir. 2008) (emphasis in original).  "Oklahoma has followed the rule that one who has no duty to speak, but makes a disclosure nevertheless, undertakes to speak truthfully[.]  One who assumes to speak when under no duty to do so cannot suppress pertinent facts or state less than the whole truth[.]" *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 992 (10th Cir. 1994) (quoting *MSA Tubular Prods., Inc. v. First Bank & Trust Co*., 869 F.2d 1422 (10th Cir. 1989)).

---

[5] Additionally, some Oklahoma courts have characterized negligent misrepresentation as nothing more than a different way of stating a negligence cause of action.  *See Bankers Tr. Co. v. Brown*, 107 P.3d 609, 613 (Okla. Civ. App. 2004); *Midfirst Bank v. Keefe, Bruyette & Woods, Inc*., No. CIV-07-1384-R, 2008 WL 11338074, at *2 (W.D. Okla. Oct. 6, 2008).  The Third-Party Complaint includes a negligence cause of action.  *See* [Doc. #38].

To survive summary judgment, Rebecca Riess must submit *admissible* evidence of every element. *See Specialty Beverages, L.L.C.*, 537 F.3d at 1181; Fed. R. Civ. P. 56; *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006) ("The requirement that the substance of the evidence must be admissible is not only explicit in Rule 56, . . . but also implicit in the court's role at the summary judgment stage."). It is undisputed that Thompson misstated a fact by asserting that Surety agreed to issue a rider to the Indemnity Agreement excluding Rebecca Riess's personal assets. Third-party defendants primarily argue that Rebecca Riess presents no admissible evidentiary material indicating that she relied on Thompson's misstatement. The court agrees.

Rebecca Riess asserts that she relied on representations made by Thompson regarding Surety's agreement to issue a rider "communicated through various means"—specifically Thompson's verbal representations that were "memorialized" in the 2:15 p.m. CST, January 30, 2015 email. *See* [Doc. #96, p. 9].

As an initial matter, with regard to the 2:15 p.m. CST, January 30, 2015 email, it is undisputed that Rebecca Riess signed the Indemnity Agreement, which was transmitted to Surety electronically through a series of emails from Robert Riess to Pataki to Thompson to Surety, prior to Thompson writing the 2:15 p.m. CST email. Rebecca Riess cannot claim reliance on an email that did not yet exist in executing the Indemnity Agreement. Further, Rebecca Riess offers no evidence of any other written representations.

As for verbal representations, the evidentiary material cited by Rebecca Riess demonstrates that she relied on Robert Riess's statement that her personal assets would be excluded, and that her entire understanding of the Indemnity Agreement was based upon conversations with Robert

Riess.[6]  *See* [Doc. #96-1, pp. 83:20-25; 46:6-9]; *see also* [Doc. #96-1, pp. 45:8 to 47:12].  However, Robert Riess is not a third-party defendant.  Thus, it is necessary for the court to consider the source of Robert Riess's representations to Rebecca Riess.

In that regard, Rebecca Riess makes two argument.  First, she points to Robert Riess's deposition testimony that Pataki informed Robert Riess, either through text or telephone call, of his conversation with Thompson on January 30, 2015, during which Thompson allegedly stated that Surety agreed to exclude Rebecca Riess's personal assets.  Rebecca Riess asserts that Robert relayed the content of his conversation with Pataki to her prior to her executing the Indemnity Agreement.  [Doc. #96-3, p. 76:9-16; Doc. #96-16, pp. 40:20 to 41:19].  Second, Rebecca Riess argues that the 2:15 p.m. CST, January 30, 2015 email is evidence that Thompson directly represented to Robert Riess that Rebecca's personal assets would be excluded.  The court will first consider the Robert Riess-Pataki communications.

Even construing the Robert Riess-Pataki evidence in the light most favorable to her, Rebecca Riess, as third-party plaintiff, has failed to satisfy her evidentiary burden.  Although a "nonmoving party need not produce evidence 'in a *form* that would be admissible at trial,' . . . the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) (emphasis in original) (internal citation omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Thus, "hearsay testimony that would be inadmissible at trial

---

[6] Third-party defendants object to Rebecca Riess's reliance on verbal representations, arguing that the Third-Party Complaint and evidentiary material demonstrate that Rebecca Riess's claims are based solely on the 2:15 p.m. CST, January 30, 2015 email.  However, for the reasons discussed in this court's order of April 17, 2018 with regard to previously unpled claims [Doc. #127, pp. 3-6], the court is not persuaded.  Further, the Third-Party Complaint specifically refers to negotiations regarding the exclusion of Rebecca Riess's personal assets prior to Rebecca Riess executing the Indemnity Agreement.  [Doc. #38, p. 4 ¶ 12].

may not be included . . . to defeat summary judgment . . . ." *Id.; see also Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1555 (10th Cir. 1995) ("Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment.").

Federal Rule of Evidence 801 defines "hearsay" as a statement that the declarant does not make while testifying at the current trial that is offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Rule 802 prohibits the admission of hearsay. FED. R. EVID. 802. Further, hearsay within hearsay is excluded unless each part of the combined statement is independently admissible. FED. R. EVID. 805. Here, there are three potential levels of hearsay: (1) Thompson's statement to Pataki; (2) Pataki's statement to Robert Riess; and (3) Robert Riess's statement to Rebecca Riess.

With regard to the first level—that Thompson told Pataki that Surety authorized the rider excluding Rebecca Riess's personal assets—the court is not persuaded the statement is hearsay. It is undisputed that Surety never authorized a rider to the Indemnity Agreement excluding Rebecca Riess's personal assets and any statements by Thompson purporting to convey Surety's authorization were false. Presumably, Rebecca Riess does not offer the statement for its truth, but, rather, for the statement's effect upon her. The statement's effect on Rebecca Riess does not turn on the truth of the matter asserted and, therefore, Thompson's alleged statement is not hearsay. *See Pedroza v. Lomas Auto Mall, Inc.,* No. CIV-07-0591-JB-RHS, 2009 WL 1325440, at *9 (D.N.M. Apr. 6, 2009). Further, Thompson's statement is admissible as an admission of a party opponent. *See* Fed. R. Evid. 801(d)(2).

The second level of hearsay is Pataki's statement to Robert Riess informing Riess of his alleged January 30, 2015 conversation with Thompson, and the content thereof. The statement is inadmissible. Although not offered for its truth with regard to Surety's alleged authorization of

the rider, the statement is offered for the truth that Thompson's prior statement was made to Pataki. Pataki is not a party-opponent, and no exception to the hearsay rule applies. Thus, the statement is inadmissible and cannot defeat summary judgment. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,* 663 F. Supp. 2d 1138, 1146-47 (D.N.M. Sept. 8, 2009); *Roswell Motors, Inc. v. Nissan N. Am., Inc*., No. CIV-07-185-MCA-DJS, 2008 WL 11333462, at *12 (D.N.M. June 30, 2008); *Water, Inc. v. Everpure, Inc*., No. CV-09-3389, 2011 WL 13174224, at *8 (C.D. Cal. Dec. 19, 2011); *Ellipsis, Inc. v. Color Works, Inc*., No. 03-2939-B, 2006 WL 1207589, at *10-11 (W.D. Tenn. May 4, 2006).

Nor does Rebecca Riess offer other admissible evidence to substantiate the Pataki to Robert Riess chain of communication. Although Riess cites Robert Riess's deposition testimony that he had a conversation with Pataki on January 30, 2015 in which Pataki conveyed Thompson's statement that Surety authorized the rider, Robert Riess' testimony as to Pataki's statement is hearsay for the same reasons discussed above. Specifically, the statement is offered for the truth that Thompson made an affirmative statement to Pataki on January 30, 2015 regarding the rider. Unlike Thompson, Pataki is not a party to this case. Moreover, Rebecca Riess offers no admissible evidence *from Pataki* regarding a January 30, 2015 conversation with Robert Riess. Rather, Pataki testified that he did not recall speaking with Robert Riess following his conversation with Thompson. [Doc. #96-7, p. 42:19-24].

With regard to the third level of hearsay, Rebecca Riess presents evidence from both Rebecca and Robert Riess that Robert conveyed to Rebecca that Pataki had informed him that Surety agreed to the rider. However, because the admission of this statement is "perched on the back[]" of an inadmissible statement, the evidence cannot be considered at summary judgment. *See Ellipsis, Inc.,* 2006 WL 1207589, at *10.

Based on the foregoing, Rebecca Riess presents no admissible evidence of conveyance of Thompson's January 30, 2015 statement regarding the rider to Rebecca via Robert Riess and Pataki prior to Rebecca signing the Indemnity Agreement. Evidence of the chain of communication is broken at the Pataki-Robert Riess "link."[7] Thus, Rebecca Riess cannot have relied on Thompson's statement as conveyed to Robert Riess from Pataki. *See Schulte v. Apache Corp.,* 949 P.2d 291, 296 (Okla. 1995) (rejecting reliance on representations to which plaintiffs had no knowledge).

As for Rebecca Riess's second argument—that the 2:15 p.m. CST January 30, 2015 email demonstrates that Thompson directly communicated Surety's purported consent to a rider to Robert Riess—the evidence submitted by Rebecca Riess is insufficient to survive summary judgment. In her response to third-party defendants' motion for summary judgment, Rebecca Riess argues "the evidence establishes that George Thompson has previously told 'Rob' that Zurich had agreed to issue a Rider," citing the 2:15 p.m. CST, January 30, 2015 email's statement that "David and Rob are aware of this . . . ." However, when read in context, the cited sentence refers to Thompson's assertion that Zurich would need a list of assets sought to be excluded, *not* Robert Riess's awareness that Surety had agreed to exclude Rebecca Riess's personal assets. *See* [Doc. #96-5 ("David and Rob are aware of this and what I will need is a list from both for Zurich to review.")]. Significantly, Rebecca Riess offers no evidence of any direct communications between Thompson and Robert Riess on January 30, 2015, much less a specific communication

---

[7] For this reason, the Oklahoma Supreme Court's decision in *Gentry v. American Motorist Insurance Company,* is distinguishable. 867 P.2d 468 (Okla. 1994). In *Gentry*, the tortious representation was made by defendant's agent directly to plaintiff. *Id.* at 470. No chain of communication existed. Here, Rebecca Riess asserts that Thompson conveyed the information to Pataki who then conveyed the information to Robert Riess. Rebecca Riess offers no evidence that Pataki acted as an agent of either Thompson or the Riesses personally. Rather, Rebecca Riess asserts, and third-party defendants do not contest, that Pataki lacked authority to act for Riess and never acted as her personal attorney. *See* [Doc. #96, p. 19, ¶¶ 22-24].

regarding Surety's purported agreement to issue the rider. Absent an evidentiary basis, any inference by this court that Thompson conveyed Surety's purported authorization to issue the rider directly to Robert Riess would be unreasonable. Although "[t]he district court must draw all reasonable inferences in favor of the nonmoving party . . . an inference is unreasonable if it requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017), *petition for cert. on other grounds docketed* (Nov. 6, 2017) (internal citation omitted) (quoting *United States v. Bowen,* 527 F.3d 1065, 1076 (10th Cir. 2008)); *see also Llewellyn v. Allstate Home Loans, Inc.,* 711 F.3d 1173, 1187 (10th Cir. 2013) ("Although our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor of the non-moving party." (quoting *Carney v. City & Cty. of Denver,* 534 F.3d 1269, 1276 (10th Cir. 2008)); *Lanman v. Johnson Cty.,* 393 F.3d 1151, 1154-55 (10th Cir. 2004) ("[T]o survive summary judgment the plaintiff has the burden to put forth sufficient evidence to warrant a verdict as a matter of law; a scintilla of evidence will not suffice."). The statement in the January 30, 2015 email suggests only a mere possibility that Thompson communicated directly with Robert Riess on January 30, 2015—the summary judgment standard requires more.

As previously stated, to survive summary judgment, Rebecca Riess must present evidence of every element of constructive fraud, including Rebecca Riess's reliance on Thompson's misrepresentation. *Specialty Beverages, L.L.C.,* 537 F.3d at 1181. Rebecca Riess cannot have relied on representations that were never communicated to her. Because Rebecca Riess fails to come forward with admissible evidence that Thompson's alleged representations were communicated to her prior to her signing the Indemnity Agreement, Riess cannot meet her

evidentiary burden to prove she relied on the misrepresentation. It is unnecessary for the court to consider the remaining elements of constructive fraud, and third-party defendants are entitled to summary judgment on this claim.

b.     Negligent Misrepresentation

As previously stated, Oklahoma courts have recognized a cause of action for negligent misrepresentation, and adopted the RESTATEMENT (SECOND) OF TORTS § 552. *See Lopez*, 303 P.3d at 916. Pursuant to RESTATEMENT (SECOND) OF TORTS § 552:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss *caused to them by their justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 552). Thus, negligent misrepresentation also requires proof of reasonable reliance on the misrepresentation. *See Schlanger Ins. Tr. v. John Hancock Life Ins.*, 897 F. Supp. 2d 1109, 1121 (N.D. Okla. 2012); *see also Schulte,* 949 P.2d at 296. Because Rebecca Riess presents no admissible evidence upon which the court may reasonably infer that she relied on Thompson's alleged representations prior to signing the Indemnity Agreement, the negligent misrepresentation claim does not survive summary judgment.[8] Third-party defendants are entitled to summary judgment as to Rebecca Riess's negligent misrepresentation claim.

---

[8] The court notes that Rebecca Riess also asserts that she relied on Thompson's reputation. *See* [Doc. #78, p. 12]. However, a person's reputation is not false information, a misstatement of fact or failure to disclose for purposes of constructive fraud or negligent misrepresentation liability. Nor does Rebecca Riess offer evidence of any representations made by Thompson directly to her. Rather, Rebecca Riess testified that she did not speak with Thompson prior to signing the Indemnity Agreement, and relied solely upon the statements of Robert Riess. *See* [Doc. #78-1, p. 40:3-19].

c. Allegations that Thompson orchestrated the need for Rebecca Riess's signature

In her motion, Rebecca Riess argues that Thompson orchestrated the decision to require her to personally sign the Indemnity Agreement. To the extent she attempts to impose liability on Thompson for "misrepresenting" Surety's requirement that she personally execute the Indemnity Agreement, her argument is unavailing because she offers no evidence that Surety did not require her signature as an Indemnitor. In fact, she does not dispute that Surety required her to personally execute the Indemnity Agreement. *See* [Doc. #76, p. 7 ¶ 9; Doc. #96, p. 7]. Further, her counterclaims and third-party claims relate only to Surety's attempt to execute on her personal assets—a position which makes little sense if Thompson misstated Surety's requirement that she act as a personal indemnitor.

Further, Rebecca Riess's argument is not supported by the January 27, 2015 email she references. In the email, from Thompson to David Sheehan, Thompson confirmed that "[n]ormally the surety would ask for both wives indemnity and *frankly [Surety] wants it that way*." [Doc. #78-10 (emphasis added)]. Although the email goes on to state that "[Surety] would back off on Becky if you ask," Rebecca Riess offers no evidence that Surety authorized Thompson to "back off on Becky."[9] In fact, the next day, Surety revised the Indemnity Agreement to include Rebecca Riess as a signatory. [Doc. #78-2]. Rebecca Riess presents nothing else in support of

---

[9] Furthermore, for the reasons discussed in this court's order regarding Surety's Motion for Summary Judgment [Doc. #70] and Rebecca Riess's Motion for Summary Judgment against Surety [Doc. #73], Thompson did not possess authority, actual or apparent, to make decisions regarding the terms of the Indemnity Agreement. Thus, any communication by Thompson not approved by Surety was outside of Thompson's authority. *See* [Doc. #147, pp. 13-16].

her contention that the amendment of the Indemnity Agreement to include her signature was at Thompson's request or urging.

Thus, Rebecca Riess offers no evidence that Thompson's representation that Surety required Rebecca Riess to personally execute the Indemnity Agreement constitutes false information, a misstatement of fact, or failure to disclose so as to justify imposition of tort liability for constructive fraud or negligent misrepresentation. Because Rebecca Riess fails to offer evidence of a fundamental element of her claim—a misrepresentation—her claim that Thompson orchestrated Surety's requirement that she execute the Indemnity Agreement does not survive summary judgment.

2. Negligence

Under Oklahoma law, the necessary elements of negligence are: "(1) a duty owed by the defendant to protect plaintiff from injury (2) failure to fulfill that duty and (3) injuries to plaintiff proximately caused by defendant's failure to meet the duty." *Fargo v. Hays-Kuehn*, 352 P.3d 1223, 1227 (Okla. 2015). Thus, "[n]egligence standing alone, without causal connection to cognizable injury, is not actionable." *Franklin v. United States*, 992 F.2d 1492, 1499 (10th Cir. 1993). "In order to sustain a recovery in an action based on negligence, there must be a causal connection between the negligence averred and the injury received, and such causal connection cannot be established by basing inference upon inference, or presumption upon presumption." *Duncan Bros. v. Robinson*, 294 P.2d 822, 823 (Okla. 1956) (quoting *Prest-O-Lite, Inc. v. Howery*, 37 P.2d 303 (Okla. 1934)). Summary judgment is appropriate when the evidence establishes that no causal connection exists between the negligent act or omission and the alleged injuries. *See Brewer v. Murray*, 292 P.3d 41, 52 (Okla. Civ. App. 2012); *Fargo,* 352 P.3d at 1228 (negligence

is question of law when there is no evidence from which a jury could reasonably find a causal nexus between the act and the injury).

Here, Rebecca Riess presents no evidence that Thompson's alleged negligence caused her claimed damages. No causal connection exists between the 2:15 p.m. CST, January 30, 2015 email from Thompson to Pataki and Riess's injuries, as it is undisputed that Riess executed the Indemnity Agreement prior to Thompson drafting the email. Nor could a jury reasonably find a causal nexus between any alleged verbal representations by Thompson to Pataki, which were then conveyed to Rebecca Riess via Robert Riess, because Rebecca presents no admissible evidence that she was informed of Thompson's statements. Although she argues that the court should rely on the alleged chain of communication, such evidence is inadmissible hearsay for the reasons discussed above. Finally, she presents no evidence of any direct representations by Thompson to either her or Robert Riess that Surety agreed to authorize the rider. Thus, Rebecca Riess has not come forward with sufficient admissible evidence upon which a jury could find a causal connection between Thompson's negligence and her injuries, and Thompson is entitled to summary judgment on her negligence claim.

>   B.   *Vicarious Liability Claims Against TSUR, L.L.C. and Alliant Insurance Services*

Rebecca Riess asserts only vicarious liability claims against TSUR, L.L.C. and Alliant, and makes no claims for direct liability. *See* [Doc. #38]. Because Rebecca Riess's claims are premised solely on Thompson's conduct, the claims against TSUR, L.L.C. and Alliant Insurance Services cannot survive summary judgment. *See Hooper v. Clements Food Co.*, 694 P.2d 943, 945 (Okla. 1985); *Hedger v. Kramer*, — F. App'x —, 2018 WL 1082983, at *6 (10th Cir. Feb. 28, 2018).

**V.    Conclusion**

WHEREFORE,

1.  The Motion of Third-Party Defendants George Thompson, TSUR, L.L.C., and Alliant Insurance Services, Inc. for Summary Judgment on the Third-Party Complaint [Doc. #75] is granted, and

2.  Third-Party Plaintiff Rebecca Riess's Motion for Summary Judgment Against Third-Party Defendants George Thompson, TSUR, L.L.C., and Alliant Insurance Services, Inc. [Doc. #78] is denied.

DATED this 4th day of May, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE